# IN THE COURT OF APPEALS OF IOWA

No. 21-0494
Filed May 11, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**HOLLI LYNN LILLIBRIDGE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, Kim M. Riley, District Associate Judge.

        Holli Lillibridge appeals her conviction for making a false report to a law enforcement authority. **AFFIRMED.**

        Jennifer Frese of Kaplan & Frese, LLP, Marshalltown, for appellant.

        Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

        Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**BOWER, Chief Judge.**

Holli Lillibridge appeals her conviction and sentence for making a false report to a law enforcement authority. Lillibridge asserts the conviction was not supported by sufficient evidence and the court improperly instructed the jury. We find sufficient evidence supports the jury's verdict and the jury instruction in question is not a misstatement of law. We affirm.

**Background Facts.**

Lillibridge reported to police an assault causing bodily injury occurred on May 10, 2019, by a police officer during the execution of a search warrant. Lillibridge was charged with a false report to a law enforcement authority, in violation of Iowa Code section 718.6(1) (2019). A jury trial was held at which evidence was presented, including: body cam footage of the incident, videos of two police interviews reporting the assault, a voicemail from Lillibridge's attorney reporting an assault during the execution of a search warrant, testimony from the detective who executed the warrant, and testimony from the officers to whom she made her report. Based on this evidence, the jury could have found as follows.

On May 10, Lillibridge was attending her husband's trial in the Marshall County courthouse. Detective Juan Tejada's bodycam video shows he asked a deputy to have Lillibridge step out of the courtroom and he was directed around the corner to a waiting room. Lillibridge entered the waiting room and told Detective Tejada she "did not have time for this" and would not talk without her lawyers present. Tejada said that was fine and he would just read her the search warrant he was there to execute. As Detective Tejada was reading the warrant out loud, Lillibridge pulled out her cell phone, unlocked the screen, and started to

navigate the screen. Detective Tejada said, "Hold on, I don't—Stop using your phone. That's what I'm getting here. Stop. Stop. Stop. Let go of your phone." After he said, "Hold on," Lillibridge started backing away, moving her arms, and turning toward the hallway on her left with her phone in her right hand. Detective Tejada reached for Lillibridge's right arm, caught hold of her sleeve with his left hand, pulled, and grabbed the phone. Lillibridge protested, saying, "My money's in there, and my ID for work." Lillibridge indicated toward her arm and said, "This hurt." Then she asked others in the waiting room if they saw what happened.

Detective Tejada finished reading the search warrant. Lillibridge asked for her money, which was stored in a pocket on her phone case, and Detective Tejada handed her the money and cards tucked in her cell phone pocket. Detective Tejada denied Lillibridge's request to lock her phone. Lillibridge told Detective Tejada she was going to file charges against him, saying he grabbed her and she would "probably have a huge bruise here," indicating toward her right arm. She claimed she could not even move her arm. Detective Tejada said, "Understand, you can't just pull away with the phone."

On May 11, Lillibridge reported an alleged physical and sexual assault to the Ames Police Department although the incident occurred in Marshall County. She had a large bandage around her upper right arm. In her account of the incident, she stated Detective Tejada told her he had a search warrant for her cell phone and she pulled out the phone to hand to him and noticed her money and ID in the case pocket. She asserted she told the detective she was giving the phone to him but wanted her money and ID. Detective Tejada grabbed her by the arm. Lillibridge repeated she would give him the phone when she had her money and

ID but Detective Tejada grabbed the phone. When she stated he had assaulted her, he responded, "Yeah, okay," and let go. She said two sheriff's deputies were there and did nothing to stop it or help her. The interviewing officer asked about the alleged sexual assault, and Lillibridge stated that when Detective Tejada grabbed her arm, he brushed her breast. The Ames officer directed Lillibridge to the Marshalltown Police Department to investigate and check for camera footage. Lillibridge said courthouse deputies told her there were no cameras in the area of the incident.

On May 13, Lillibridge's attorney left a voicemail message for the chief of the Marshalltown Police, stating they would like to file a complaint of an assault during the execution of the search warrant. On May 16, Lillibridge and her attorney made a formal complaint to the Marshalltown police. They informed an internal affairs officer that Lillibridge had been treated at a medical center and provided photos of the bruising, a written statement, and a medical release. Lillibridge's arm was still bruised. Lillibridge stated Detective Tejada told her he had a search warrant for her cell phone and she saw it was for her phone. When she pulled out the phone to hand it to him, she turned it over to pull her money and ID from the case pocket and told Detective Tejada she was giving the phone to him but wanted her money and ID. She stated Detective Tejada lunged, grabbed her by the arm, and squeezed hard as she repeated she was giving him the phone but she needed her money and ID. She claimed she stumbled back as she was pulling her arm from the detective's grip and telling him that he assaulted her. She said his response was, "Yeah, okay," and he slammed her phone on the table. When asked about how she felt, she said "humiliated" and "really scared." Lillibridge and

her attorney demonstrated what Lillibridge remembered happening and indicated they wanted Detective Tejada charged with assault causing bodily injury.

Lillibridge was subsequently charged with a false report to law enforcement. The jury convicted Lillibridge as charged.

Lillibridge appeals, claiming the district court erred in denying her motion for judgment of acquittal as the evidence was insufficient to support her conviction. She also asserts the court failed to adequately instruct the jury regarding the elements of the offense of false reports.

**Scope and Standards of Review.**

"We . . . review claims of insufficient evidence for correction of legal error." *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). "[W]e are highly deferential to the jury's verdict" and will uphold the verdict if substantial evidence supports it. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). "In reviewing a challenge to the sufficiency of evidence supporting a guilty verdict, we consider 'all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *Schiebout*, 944 N.W.2d at 670 (citation omitted). Evidence is substantial if "it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted). "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Jones*, 967 N.W.2d at 339 (citation omitted).

We also review jury-instruction challenges for correction of legal error. *State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020).

**Sufficiency of the evidence.**

The supreme court has explained the crime of making a false report:

Iowa Code section 718.6(1) punishes the conduct of a person "who take[s] affirmative steps to convey false information to law enforcement authorities." If a person knowingly reports false information to law enforcement authorities, that person commits a simple misdemeanor. Likewise, a person who reports the alleged occurrence of a criminal act, knowing the criminal act did not occur, also commits a simple misdemeanor. However, if the criminal act falsely reported is a serious misdemeanor, aggravated misdemeanor, or felony, that person commits a serious misdemeanor.

*Id.* at 325 (alteration in original) (internal citations omitted). "There is sufficient evidence of guilt if the defendant falsely reports conduct that would establish the prima facie elements of a crime." *Id.* at 327.

Lillibridge took affirmative steps to report an assault causing bodily injury to law enforcement. A reasonable jury could find Lillibridge's account to police was contradicted by the bodycam video of the incident in evidence. Her account changed the order of events in a way that painted Lillibridge as complying with the warrant and the detective responding in an unnecessarily aggressive and threatening manner. Instead, the video evidence shows Lillibridge opening something on her phone screen and making no effort to turn it over in response to the warrant. She reported physical contact that did not occur. The jury also heard Detective Tejada's testimony he grabbed Lillibridge's sweater and pulled while reaching for the phone to prevent the destruction of evidence, did not squeeze her arm, and used reasonable force in executing the warrant for Lillibridge's phone. The officer investigating Lillibridge's assault claim testified about comparing the

video to Lillibridge's version of events and opined the force used during the execution of the search warrant was reasonable.

Viewing all the evidence in the light most favorable to the State, we conclude the jury's verdict is supported by substantial evidence. The court did not err in denying Lillibridge's motion for judgment of acquittal.

**Jury instruction.**

Lillibridge asserts, "The court erred in instruct[ing] the jury that a serious misdemeanor can be committed by falsely reporting information involving a serious misdemeanor. A serious misdemeanor violation of 718.6 can only be committed if the report of the offense of assault causing bodily injury is false." In other words, the report of the occurrence of the offense has to be false, not just some of the information provided. She relies on the dissent in *Bynum* to support a different or second instruction. *See id.* at 332–34 (Appel, J., dissenting).

The State claims Lillibridge did not preserve error because she made a different argument to the district court, asserting a separate marshalling instruction for the lesser-included simple misdemeanor offense should be given. In the event error is preserved, the State contends she has not articulated an actual error in the instruction or explained how the *Bynum* dissent applies to her argument.

To preserve error on jury instruction, counsel must timely and specifically object to the instruction, or request a different instruction. *See State v. Davis*, 951 N.W.2d 8, 16 (Iowa 2020). Counsel did so, objecting to the proposed marshalling instruction and requesting the court provide two marshalling instructions.

> I think Instruction Number 16, when you say . . . the marshalling instruction number 1, I think for it to be a serious misdemeanor, you have you to report assault causing bodily injury. And then for it to be

a simple misdemeanor, it has to be information. I think that is laid out by 718.6. I think that this is also supported by *State v. Bynum*. So I do think that a separate marshalling instruction is appropriate, that the act is reported. So, in other words, the serious misdemeanor, and then if the defendant is found not guilty of that or if you aren't convinced beyond a reasonable doubt, then we go into whether or not false information has been provided.

The defense's request sufficiently preserves the distinction Lillibridge argues on appeal.

"[T]he court is required to instruct the jury as to the law applicable to all material issues in the case. While the instruction given need not contain or mirror the precise language of the applicable statute, the instruction must be a correct statement of the law." *Bynum*, 937 N.W.2d at 327 (cleaned up) (citations omitted).

The jury's instruction required the State prove:

1. On or about the [tenth] of May, 2019, [Lillibridge] reported or caused to be reported information to a law enforcement authority concerning the alleged occurrence of a criminal act.
2. When reporting the alleged criminal act, [Lillibridge] knew, as defined in [a separate instruction], the information was false.[1]
3. [Lillibridge] reported a crime of assault causing bodily injury, a serious misdemeanor.[2]
If the State has proved all of the elements, [Lillibridge] is guilty of false reports of a serious misdemeanor to law enforcement authority. If the State has proved only elements 1 and 2, [Lillibridge] is guilty of false reports. If the State has failed to prove either element 1 or 2, [Lillibridge] is not guilty.

The offense is statutorily defined:

A person who reports or causes to be reported false information to . . . a law enforcement authority . . .knowing that the information is false, or who reports the alleged occurrence of a criminal act knowing the act did not occur, commits a simple misdemeanor, unless the alleged criminal act reported is a serious

---

[1] The instructions defined knowledge as "[Lillibridge] had a conscious awareness that the information she provided to police was false."
[2] The instructions provided a definition of assault causing bodily injury, which Lillibridge does not contest.

or aggravated misdemeanor or felony, in which case the person commits a serious misdemeanor.

Iowa Code § 718.6(1).

The language used in the instruction directly mirrors the false-reports instruction quoted in *Bynum*. *See id.* at 323. The trial court ruled on Lillibridge's objection, stating the instruction "sufficiently describes the crime and the lesser-included offense, and that is referenced in the paragraph beneath the three numbered paragraphs in the marshalling instructions. So, I'm inclined to leave [the instruction], with the agreed modifications, as is." In her request for a second instruction, Lillibridge described the distinction by stating, "I think for it to be a serious misdemeanor, you have you to report assault causing bodily injury." The third element of the instruction stated precisely that, and the instruction then explained proving the third element was the difference between the levels of the offense.

The instruction is a proper statement of the law, and we affirm the district court.

**AFFIRMED.**